Good morning, Your Honors. Bobby Hensler, Federal Defenders of San Diego, for Mr. Farfan-Martinez. I'd like to go right to the breach issue here, Your Honors. I think, first, it's it would be helpful to point out the two portions of the plea agreement that the government did breach. The plea agreement, I'll refer the Court to the record at page 10 to 11, that's the bottom of page 10, required that the parties, quote, will jointly recommend a total offense level of 8. I'd also refer the Court to the record at page 12, where the, quote, parties agree that the defendant should be sentenced to six months' imprisonment. Here, at sentencing, the government agreed with the district judge's determination regarding relevant conduct. In what way? What was the language? The government submitted the recommendation. The recommendation was offense level 8 and six months. Never varied from it. Never said, you know, go up to higher. All that the AUSA did was agree with the judge that the judge had the discretion not to accept the recommendation. With all due respect, not at all, Your Honor, and I would refer the Court to page 31 of the record, and that's the sentencing transcript. The counsel for the government was asked whether it agreed with the district judge. The government said it did. The government's, quote, I agree with Your Honor's finding that the Court can consider under the law that those priors were relevant conduct, continues. What's wrong with that? I mean, he's right. The Court can consider it. Right. But the judge, if you look to the sentence previous to that, the judge also asked, do you acknowledge that a mistake was made in this, in calculating these guidelines? And he said, I can't acknowledge that. That's the wrong answer, Your Honor. The answer is there was no mistake. The government entered a plea agreement where the total offense level was 8. Therefore, there was no mistake in reaching the offense level of 8. The government can't come in to sentence and say, I don't know if there's a mistake. That's a breach. Well, no. But the — every time you have a sentence report, the pre-sentence report can raise something that's new. And so, therefore, you know, he didn't acknowledge that a mistake was made based upon the pre-sentence report and based upon what they knew at the time they entered into the plea agreement. Your Honor, the government was well aware of the prior conduct when it entered the plea agreement. The government knew about Mr. Farfan's May of 06 detention. The government, nonetheless, enters a plea agreement where the total offense level was 8. I see what you're talking about. Are you talking about the specific AUSA that entered into the plea agreement? Knew that? Yes, Your Honor. And where's the evidence of that in the record? The AUSA that was here at the sentencing hearing wasn't the same AUSA that entered into the plea agreement. So where's the evidence that there was some knowledge at that point? Well, first, Your Honor, I would say that the United States government doesn't get to, you know, delineate which particular lawyer has knowledge of the plea agreement. If they're going to send some other lawyer down to argue at sentencing, it has to be presumed that he has the knowledge that the lawyer who entered the plea agreement has. But even this one said basically that, you know, even if we had the knowledge, we may have based that decision on the fact that we didn't think we could prove it. And that's what he said. He did say that. And that also is a breach. Why is that a breach? Because he can't say that. The government entered a plea agreement where the total offense level is 8. That's what they did. They knew before they entered the plea agreement that Mr. Farfan had these, as the 12 prior apprehensions. Let me put it this way. The government never raised this issue until the court raised the issue. The court raised the issue first. In other words, it wasn't a situation where, you know, the court already made up its mind, except about the factual issue. And then even then, it offered to the defense counsel as to that factual issue, do you want to challenge it factually? And the defense counsel says no. So the defense counsel says, no, we're not going to challenge it factually. So therefore, you have this presumed set of events. And it does affect the sentencing. And the judge can consider it. And even the plea agreement says that the court can consider it. Right. The defense counsel didn't object that Mr. Farfan had been detained on that occasion, the facts of that particular arrest. In fact, the defense counsel agreed with the district court judge that if he considers it, that does affect the sentencing. So therefore, under your argument, the defense counsel also violated the plea agreement. Well, be that as it may, I don't think that's an issue here. It's a good argument, though. I'm sorry? It's a good argument for the government, though, isn't it? I'm sure he appreciates that. Okay. Getting back to Your Honor's question about that it was a question asked by the district judge, yes, it was a question. But the government's answer was a breach. The government, when asked whether a mistake was made, the government can't say, I don't know. The government had to say right there, no, Your Honor, there was no mistake made. We entered a plea agreement where the total offense level is 8. We recommend 6 months, period. End of story. The government didn't just say that, however. The government then goes on, and I would refer the Court to page 32 of the record. No question from the district judge. The government says the Court will note in the pre-sentence report there are 12 prior apprehensions of the defendant. Theoretically, if he went back, we might find other aliens and we might bring the guideline level even higher. Clearly there, there is no question. He follows that quote by saying, so I am speculating in that regard, Your Honor, but I certainly think that it is possible that the Part VI contemplated resolution of the case rather than potentially, as this Court noted at the outset, an evidentiary hearing should be to determine whether or not the defendant was smuggling aliens on that prior apprehension. In other words, he concedes that the government doesn't want that. That's not at all what he concedes, with all due respect, Your Honor. Again, that portion of the record you read is also a breach. The government can't say what the parties may have contemplated. The parties agreed to a total offense level of 8, period. That's the recommendation. That's what Mr. Farfan waived, his constitutional right to a trial by jury in exchange for the government's recommendation of an offense level of 8 in a 6-month sentence. Here, the Court announced that. And it did with the understanding that the Court could elect not to adopt the recommendation to base its decision on facts in the pre-sentence report, which it did. Absolutely. The Court was certainly entitled to that, to do that. Mr. Farfan knew that. But if you look at, for example, the Camarillo-Tello opinion from this Court, what Mr. Farfan also agreed to was a united front at sentencing. And as you mentioned, Your Honor, this may have not done him any good, but when he waived his right to trial by jury, he expected that and he was required under the plea agreement, under the Constitution, under this Court's case law, to get that unified front. And getting back to the government's breach when it offered up the information without a question that theoretically he may have smuggled other aliens, you know, that the Mondragon opinion from this Court speaks directly to that point. That is not an instance where the government is offering information, correcting a factual inaccuracy, or providing information the district judge didn't have. The district judge was reading from the pre-sentence report. The district judge had that. So under Mondragon, that is also a breach. I would quickly like to address the plain error standard as it applies to this case. I think moving past elements one and two, the plain error, whether this affected his substantial rights. As we note in the papers, we don't feel that this should apply here because the harmless error rule does not apply to a government breach of a plea agreement. But even if it does, there is a reasonable probability that Mr. Farfan's sentence would have been different had the government complied with the plea agreement. In other words, if when the district judge asked the government's attorney whether there was a mistake made, and the government attorney says, no, Your Honor, there's no mistake here. We recommend an offense level of eight. We recommend six months. There's a reasonable probability that the district judge then would have followed the plea agreement and sentenced Mr. Farfan to six months. What is the evidence that you're referring to? I'm sorry? What is the evidence that you're referring to? The judge came out and indicated to the AUSA that he thought the government's position was wrong. If the government's position says it's not wrong, what is the evidence that the court would have said, oh, I'm going to ignore what's contained in the pre-sentence report? Okay. Thank you, Your Honor. The government lawyers could have and should have said, Your Honor, we knew about this when we entered the plea agreement. Nonetheless, we recommended in the plea agreement a sentence of six months and an offense level of eight. The AUSA has no control over the government's, I'm sorry, the trial judge's exercise discretion as far as sentence is concerned. Of course. The recommendation is just the recommendation. Absolutely. But there is the recommendation. I'm sorry? And he was aware of the recommendation at the time the proceeding started. Well, he was aware of the recommendation, and the government made the six-month recommendation, but then it went on to contradict the recommendation and committed plain error.  You have about 30 seconds left.  Can I reserve that 30 seconds? Yes. Thank you. Good morning, Your Honors. John Kramer, Assistant U.S. Attorney from the Southern District of California appearing on behalf of the United States. Your Honors, Farfan never claimed there was a breach of the plea agreement in the district court for one simple reason. There was no breach of the plea agreement in the district court. Mr. Farfan signed a plea agreement with the United States that said if he believed that the government's recommendation was not in compliance with the plea agreement, he would object at the time of sentencing, otherwise he would waive that objection. Farfan's counsel never objected. There is no plain error. There is no obvious error because it apparently was not obvious at all to anyone in the courtroom that there was a breach of the plea agreement. The government was obligated to recommend six months in custody. It did so. It did so even after the district court told all of the parties that it was rejecting the plea agreement. The government nonetheless stood its ground. This Court has said that the plea agreement or a plea agreement does not bar the government from honestly answering the district court's questions. To the contrary, honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded, or impaired by a plea agreement. If the government had been asked by the district court what the maximum penalty was in this case, and government counsel responded that the maximum statutory penalty was 10 years, I can see a basis for Farfan arguing that the government's honest answer to the court was a violation of the plea agreement. The government deferentially responded to the court's disagreement with its plea agreement by saying that the government stood by its recommendation of six months, notwithstanding the court's findings that it could enhance the sentence based upon uncharged and unconvicted conduct. The government prosecutor had an obligation to properly advise the court as to the law as an officer of the court. And the prosecutor properly advised the court that it did have the discretion, as it appears from the transcript, quote, under the law to increase the sentence in this case based on the uncharged conduct. Importantly, the government counsel ---- Alito, did the district court solely rely on an arrest report for the information that it utilized to enhance? And if it did, wouldn't that be error? No. The court relied on the pre-sentence report, indicating that on May ---- Did the pre-sentence report rely on anything other than an arrest report? I would have to review the pre-sentence report to see whether it referenced the arrest report. I don't remember. But I think the law is that the court can consider and find facts by a preponderance of the evidence from an uncontested pre-sentence report. Here ---- Well, what happens if the pre-sentence report itself only refers to an arrest report? And there is case law that says that you cannot base an enhancement solely on an arrest report. You can on certain types of police reports and things that consider modern things other than just simply an arrest report. An arrest report itself can't be the basis. So if the pre-sentence report only indicates that it relied on an arrest report, wouldn't that be an insufficient basis? Are you arguing something would ---- because of the fact that it's included in the pre-sentence report, that at that point it can be utilized? Your Honor, that may be true, but I think what distinguishes that circumstance from this is that defendant, Mr. Farfan, did not contest the facts and agreed to the facts. So there was no evidentiary hearing. As to those particular facts ---- There's no reason to go beyond them. There's no reason. And I think it's the Rendon case that says that the court may rely on an uncontested pre-sentence report. Contrary to Mr. Farfan's argument, the government, again, with deference to the district court, tried to point out a number of reasons why the plea agreement did not include an enhancement for relevant conduct, including pointing out that in the Southern District of California there are more than 150,000 people are arrested at the border every year, that the government had an incentive to resolve cases by way of a resolution, in this case a fast-track resolution of the case, and that sometimes the government may not have the witnesses available to conduct evidentiary hearings to establish the uncharged conduct. So the government, by way of trying to support the reasonable nature of the plea agreement, pointed out that there were plausible explanations. The government never said the plea agreement was a mistake. Government counsel answered candidly that he could not acknowledge that there was a mistake in this case. The fact that government counsel pointed out that there were 12 prior arrests of Mr. Farfan between approximately July of 2005 and May of 2006 only went for the court, if it decided to increase the sentence based on uncharged conduct, could be inviting as many as 12 evidentiary hearings on all of those prior cases. Your Honors, if I may briefly address the issue of the uncharged conduct. It is clear the law is that the court may consider uncharged and unconvicted conduct. If it is deemed relevant conduct, the government's defense that Judge Burns did not abuse its discretion in applying the application notes to the advisory sentencing guidelines, finding that the 12 prior apprehensions of Mr. Farfan during the period of approximately July of 2005 through May of 2006, together with two other successful alien smuggling incidents that Mr. Farfan acknowledged during the period from the July 2005 period to the May 2006 period, for a total of at least 14 alien smuggling incidents that occurred within a period of about a year and a half. The application notes to the guidelines say that the court may properly find relevant conduct when it examines the similarity of the offenses, the regularity or repetition of the offenses, and the time intervals. Mr. Farfan's argument that 8 months had elapsed is just one factor to consider amongst those. I think this is fully briefed. I think this is fully briefed. Thank you, Your Honor. And I would submit on the final issue, no court has yet decided that the maximum range under the advisory sentencing guidelines constitutes the statutory maximum. So in sum, Mr. Farfan was not entitled to a trial by jury. It's the contrary, isn't it? Yes. The government does cite the recent, I think, Sanchez case, which occurred after the Rita decision that affirms the proposition that under the advisory scheme, this sentence was proper. And I would submit that on the briefs. Thank you. Thank you, Your Honors. Thank you, Your Honors. Very briefly. Yes. The government seems to try to argue that it had an ethical duty to agree with the district judge and to volunteer the information that the district judge was already well aware of under the pre-sentence report, which he was holding in his hands and reading from. The government had no ethical duty. The government's ethical duty was to Mr. Farfan Martinez. He had a constitutional right to expect that the government would comply with the plea agreement. It didn't do so, and it breached. Thank you, Your Honors. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Bybee, Wu